*2012 ME 134*

**Ellen MICHALOWSKI**

v.

**BOARD OF LICENSURE
IN MEDICINE et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2012.
Decided: Dec. 6, 2012.

Eric M. Mehnert, Esq. (orally), Hawkes & Mehnert, LLP, Bangor, for appellant Ellen Michalowski.

William J. Schneider, Attorney General, Dennis E. Smith (orally), Asst. Atty. Gen., and Paul Stern, Dep. Atty. Gen., Augusta, for appellees Board of Licensure in Medicine et al.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Ellen Michalowski appeals from a judgment of the Superior Court (Kennebec County, *Marden, J.*) dismissing her complaint seeking judicial review pursuant to M.R. Civ. P. 80C and relief pursuant to 42 U.S.C.S. § 1983 (LexisNexis 2002), arising from the Board of Licensure in Medicine's decision to revoke her medical license. Michalowski challenges the court's conclusion that (A) it lacked subject matter jurisdiction to review the Board's decision because the District Court has exclusive jurisdiction to review nonconsensual license-revocation orders pursuant to 10 M.R.S. § 8003(5) (2011); and (B) her section 1983 claim should be dismissed because the Board members had authority to revoke her license, and are immune from suit. We affirm the Superior Court's judgment.

## I. BACKGROUND

[¶ 2] Michalowski was first licensed to practice medicine in Maine in 1996. Between 2005 and 2007, Michalowski underwent multiple knee surgeries stemming from a total knee replacement, for which she received narcotic painkillers. Michalowski's subsequent painkiller dependency gave rise to an investigation by the Board of Licensure in Medicine, which initiated disciplinary proceedings against her.

[¶ 3] Michalowski entered into a consent agreement with the Board in April 2007, in which she admitted that she had inappropriately obtained narcotic prescriptions from multiple providers over a two-year period and that this constituted unprofessional conduct and grounds for discipline pursuant to 32 M.R.S. § 3282–A(2)(F) (2011). The consent agreement included five years of license probation, required that she obtain prescriptions from a single primary care physician and a single pharmacy, and authorized the Board to monitor her medical practice and use of prescriptions. Michalowski acknowledged in the consent agreement that her failure to comply with its terms would constitute grounds for additional disciplinary action pursuant to 10 M.R.S. § 8003(5).

[¶ 4] In violation of that agreement, between July 2007 and July 2008, Michalowski wrote over seventy-five prescriptions for narcotics listing a neighbor as the patient, without the neighbor's knowledge. Purporting to be her neighbor, Michalowski purchased these prescriptions from Canadian pharmacies for her own use. During this period, Michalowski crossed the Canadian border over one hundred times at six different crossings and obtained over six thousand narcotic tablets from seven different pharmacies. After the Board learned of her conduct, Michalowski entered into an interim consent agreement with the Board in September 2008, in which she agreed to a temporary suspension of her medical license until the Board took final disciplinary action.

[¶ 5] In September 2008, the Board initiated an administrative complaint against Michalowski, listing the following grounds for discipline: habitual substance abuse, 32 M.R.S. § 3282–A(2)(B) (2011); unprofessional conduct, 32 M.R.S. § 3282–A(2)(F); and failure to comply with the terms of probation, 10 M.R.S. § 8003(5)(A–1)(4). Michalowski responded to the complaint in July 2009, acknowledging that she had become addicted to her pain medications, detailing her treatment efforts, and contesting some facts that the Board had included in a proposed consent agreement, but not contesting or denying the allegations regarding the Canadian prescriptions.

[¶ 6] On April 13 and July 13, 2010, the Board conducted a disciplinary hearing. On the day before the second day of the hearing, Michalowski filed a motion to dismiss the proceeding, alleging that bias by Board members violated her right to due process and that the Board lacked jurisdiction to hold the hearing because its governing statute, 32 M.R.S. §§ 3263 to 3300–B (2011), required it to proceed by filing a complaint in the District Court. Following oral argument by counsel, the hearing officer denied the motion.

[¶ 7] Michalowski did not appear for the second day of the hearing, explaining that she chose not to attend because she had nothing further to offer. Although Michalowski's attorney appeared telephonically, he did not cross-examine witnesses but did present a written closing statement prepared by Michalowski. The Board issued a written order on September 14, which contained extensive findings and determined that Michalowski had violated provisions of 32 M.R.S. § 3282–A(2) and 10 M.R.S. § 8003(5). The order revoked Michalowski's medical license and required her to pay up to $14,000 in costs for the hearing, as well as transcription costs.

[¶ 8] Michalowski filed a petition for review and complaint for relief in the Superior Court in October 2010. The complaint included an appeal of the Board's order pursuant to the provisions for judicial review of final agency action in the Administrative Procedure Act, 5 M.R.S. §§ 11001–11008 (2011), and M.R. Civ. P. 80C, alleging bias by the Board, due process violations, and that the Board lacked statutory authority to revoke her license. Michalowski also alleged a cause of action for her constitutional claims pursuant to 42 U.S.C.S. § 1983.

[¶ 9] The court dismissed the M.R. Civ. P. 80C appeal for lack of subject matter jurisdiction, concluding that the District Court has exclusive jurisdiction to review nonconsensual license-revocation orders pursuant to 10 M.R.S. § 8003(5) because the Board acted pursuant to the authority granted by that section. For the same reason, the court dismissed the section 1983 claim, also finding that the Board members have quasi-judicial immunity.

## II. LEGAL ANALYSIS

[¶ 10] On appeal, Michalowski contests the Superior Court's dismissal of her action, challenging (A) the Superior Court's determination that it did not have jurisdiction to review the Board's action, and (B) the court's dismissal of the section 1983 claim. We address each issue in turn.

A. The Superior Court's Jurisdiction to Hear Appeals of Board Revocation Orders

[¶ 11] The issue of whether the Superior Court had subject matter jurisdiction to review the Board's revocation of Michalowski's medical license turns, in part, on whether the Board had the authority to revoke her medical license pursuant to 10 M.R.S. § 8003(5) in the first place, or whether the Board was instead required to file a complaint in the District Court pursuant to 32 M.R.S. § 3282–A. Accordingly, we address (1) the Board's statutory authority to revoke a medical license as the first step in our jurisdictional analysis, followed by (2) an examination of the relevant jurisdictional statutes. We review questions of statutory interpretation and subject matter jurisdiction de novo. *See Tomer v. Me. Human Rights Comm'n,* 2008 ME 190, ¶ 9, 962 A.2d 335; *Tolliver v. Dep't of Transp.,* 2008 ME 83, ¶ 11, 948 A.2d 1223.

1. The Board's Authority to Revoke a Medical License

[¶ 12] The extent of the Board's authority to revoke a medical license pur-

suant to 10 M.R.S. § 8003(5) is a question of first impression. As will soon become apparent to the reader, our task here is not simple, requiring that we apply several rules of statutory construction to construe two related, but seemingly contradictory, statutes—10 M.R.S. § 8003(5)(A–1)(2–A)[1] and 32 M.R.S. § 3282–A(1)(D).[2] We employ a three-part analysis to construe these statutes. We begin with the familiar rule of construction that directs us to (a) "look first to the plain language of the statute to discern the Legislature's intent." *Tolliver*, 2008 ME 83, ¶ 11, 948 A.2d 1223. Where, as here, two statutes deal with the same subject matter, we also (b) look at the plain language of both through an additional lens by which the two statutes are construed in harmony with each other, if possible. *See Butler v. Killoran*, 1998 ME 147, ¶ 11, 714 A.2d 129. If harmony cannot be achieved, we then (c) apply the rule of statutory construction that "a statute dealing with a subject specifically prevails over another statute dealing with the same subject generally . . . *unless* it appears that the [L]egislature intended to make

the general [statute] controlling." *Id.* (emphasis added) (quotation marks omitted).

### a. Plain Meaning

[¶ 13] As we have previously discussed, "most professional conduct . . . is governed by two sets of statutes." *Zumbach v. Bd. of Real Estate Appraisers*, 2011 ME 31, ¶ 6, 15 A.3d 741. Here, 10 M.R.S. §§ 8001–8009 (2011)[3] "governs the practice of professional conduct in general." *Zumbach*, 2011 ME 31, ¶ 6, 15 A.3d 741. That statute specifically includes the Board of Licensure in Medicine within its reach, and grants certain enumerated powers to it. *See* 10 M.R.S. §§ 8001–A(4), 8003(5). Additionally, the Board has its own governing statute, 32 M.R.S. §§ 3263 to 3300–B.[4]

[¶ 14] Title 10 M.R.S. § 8003(5) provides that "[i]n addition to authority otherwise conferred, unless expressly precluded by language of denial in its own governing law," a licensing board may "[r]evoke a license or registration." 10 M.R.S. § 8003(5)(A–1)(2–A). Further, a licensing board's "jurisdiction to suspend and re-

---

1. Title 10 M.R.S. § 8003(5) (2011) provides, in relevant part:

 **5. Authority of bureaus, offices, boards or commissions.** In addition to authority otherwise conferred, unless expressly precluded by language of denial in its own governing law, each bureau, office, licensing board and commission within or affiliated with the department may take one or more of the following actions. . . .

 **A–1.** For each violation of applicable laws, rules or conditions of licensure or registration, the bureau, office, board or commission may take one or more of the following actions.

 . . . .

 **(2–A)** Revoke a license or registration. . . .

2. The relevant provisions of 32 M.R.S. § 3282–A (2011) provide:

 If the [B]oard [of Licensure in Medicine] finds that the factual basis of [a] complaint is true and is of sufficient gravity to warrant

further action, it may take any of the following actions it determines appropriate.

. . . .

 **D.** If the board concludes that suspension or revocation of the license is in order, the board shall file a complaint in the District Court in accordance with Title 4, chapter 5.

3. Title 10 M.R.S. §§ 8001–8009 (2011) has been amended since this action began; however, the amendments are not relevant to this appeal. *See, e.g.,* P.L.2011, ch. 286, B–2 (effective Sept. 28, 2011).

4. Title 32 M.R.S. §§ 3263 to 3300–B (2011) has since been amended; however, the amendments are not relevant to this appeal. *See e.g.,* P.L.2011, ch. 477, § J–1 (effective Feb. 23, 2012) (to be codified at 32 M.R.S. § 3300–C).

voke occupational and professional licenses ... is concurrent with that of the District Court." *Id.* § 8003(5). Thus, the Board of Licensure in Medicine has authority to revoke a professional license pursuant to 10 M.R.S. § 8003(5)(A–1)(2–A), concurrent with the District Court, "unless expressly precluded by language of denial" found in the Board's governing statute, 32 M.R.S. §§ 3263 to 3300–B. *See* 10 M.R.S. § 8003(5).

[¶ 15] The Board's governing statute provides that after an investigation regarding a complaint against a medical licensee, "[i]f the board finds that the factual basis of the complaint is true and is of sufficient gravity to warrant further action, it may take any of the following actions it determines appropriate." 32 M.R.S. § 3282–A(1). One of the authorized actions is that "[i]f the board concludes that suspension or revocation of the license is in order, the board shall file a complaint in the District Court...." *Id.* § 3282–A(1)(D). The Board's governing statute contains no explicit reference to the revocation authority conferred by 10 M.R.S. § 8003(5)(A–1)(2–A). *See* 32 M.R.S. §§ 3263 to 3300–B.

[¶ 16] At first blush, the plain language of the relevant provisions of Title 10 and Title 32 regarding the Board's revocation authority appear to be in direct conflict. The general revocation authority pursuant to 10 M.R.S. § 8003(5)(A–1)(2–A) provides various licensing entities—including the Board of Licensure in Medicine—with the authority to revoke a license "unless expressly precluded by language of denial" in the entity's corresponding governing statute. In contrast, the specific revocation provision found at 32 M.R.S. § 3282–A(1)(D) mandates that the Board "shall" file a complaint for revocation in the District Court. This leads us to consider if the plain language of these apparently contradictory provisions can be harmonized.

b. Harmonizing 10 M.R.S. § 8003(5)(A–1)(2–A) and 32 M.R.S. § 3282–A(1)(D)

[¶ 17] Michalowski suggests one possible way of harmonizing the two statutes. If the directive found in 32 M.R.S. § 3282–A(1)(D)—that "the board shall file a complaint in the District Court"—constitutes "express[ ] preclu[sion] by language of denial" for purposes of 10 M.R.S. § 8003(5), then the governing statute's revocation procedure in Title 32 operates as a rejection of the broader powers granted by the general revocation provision in Title 10. To determine whether this harmonization is feasible, we must construe the operative phrase, "expressly precluded by language of denial."

[¶ 18] The meaning of "preclude" includes to "obviate by anticipation." Webster's Third New International Dictionary 1785 (Philip Babcock Gove, ed., 2002). The word "denial" embraces a "refusal to ... assent to, or sanction," or a "rejection of something." *Id.* at 602. Thus, for the exception to 10 M.R.S. § 8003(5)(A–1)(2–A)'s general revocation provision to apply, the Board's governing statute in Title 32 must include language that expressly anticipates and rejects the revocation authority granted in Title 10. *See Harriman v. Comm'r, Dep't of Human Servs.*, 595 A.2d 1053, 1056 (Me.1991) ("In the absence of a contrary statutory definition, it is the everyday usage of those words that must control their meanings within the statute.").

[¶ 19] The Board's governing statute in Title 32 contains no such language. The statute provides that the Board "may" take an array of possible actions in response to a disciplinary complaint, including that the Board "shall" file a complaint

for revocation in the District Court if it concludes that a license suspension or revocation is in order. 32 M.R.S. § 3282–A(1)(D). This constitutes a mandate that the Board affirmatively act in a certain way, but only if it first decides that a suspension or revocation is in order. *See* 1 M.R.S. § 71(9–A) (2011) (defining "shall" as "a mandatory duty, action or requirement").[5] However, an affirmative mandate to act in one manner cannot simultaneously be an *express rejection* of a second power to act in a different manner; at most, such a mandate is an *implicit rejection* of the second power. This conclusion is consistent with the view that the Legislature's use of "shall" to make a certain action by an administrative board mandatory does not preclude that board from taking other actions authorized by other statutory provisions.

[¶ 20] We adopted this view in *Senty v. Board of Osteopathic Examination & Registration*, 594 A.2d 1068, 1070 (Me.1991), where we determined that the Legislature's use of the word "shall" to mandate that the Board of Osteopathic Examination and Registration grant a professional license if certain conditions are met did not preclude that Board from denying a license based on authority granted by other statutory provisions. The same principle applies here. The Legislature's use of "shall" in describing the revocation procedure in the Board's governing statute in Title 32 does not preclude the Board from exercising authority the Legislature separately conferred upon the Board pursuant to the revocation authority found in Title 10.

[¶ 21] Thus, although the language contained in Title 32 affirmatively directs the Board to file a complaint in the District Court, Title 32 does not include express language anticipating and rejecting the authority that Title 10 confers on the Board. Accordingly, the Board's governing statute does not disavow the authority provided to the Board by Title 10, and the two statutes cannot be harmonized in the manner Michalowski asserts.

c. The Rule that the More Specific Law Takes Precedence Over the More General Law Unless the Legislature Intended Otherwise

[¶ 22] Our inquiry does not end with our conclusion that the two statutes cannot be harmonized in the manner Michalowski contends. Even though 32 M.R.S. § 3282–A(1)(D) does not contain language of denial expressly precluding the Board's general revocation authority established in 10 M.R.S. § 8003(5)(A–1)(2–A), we must still consider whether the governing statute's specific revocation procedure should take precedence over the general revocation authority.

[¶ 23] As a general rule of statutory construction, a specific provision will control a more general provision "unless it appears that the [L]egislature intended to make the general act controlling." *See Butler*, 1998 ME 147, ¶ 11, 714 A.2d 129 (quotation marks omitted). However, that rule of construction generally applies where two discordant statutes are like two ships passing in the dark of night, completely oblivious to the possible presence of the other. That is not the case here. Title 10's grant of general revocation au-

---

5. This definition only "applies to laws enacted or language changed by amendment after December 1, 1989." 1 M.R.S. § 71(9–A) (2011). Although the Legislature enacted the operative provision of section 3282–A in 1983, *see* P.L.1983, ch. 378, § 53 (effective Sept. 23, 1983), it has since amended the relevant language, *see, e.g.*, P.L.1999, ch. 547, § B–67 (effective March 9, 2000), thereby making section 3282–A(1)(D) subject to 1 M.R.S. § 71(9–A).

thority contains language indicating a full awareness of the possibility that a board's governing statute will reject that authority. Yet the Title 32 governing statute does not recognize the existence of the general revocation authority found in Title 10. In such a scenario, mechanical application of the canon that "the specific takes precedence over the general" would be akin to following the ship that is oblivious to the presence of the other, rather than following the ship that is alert to the possible existence of the first vessel.

█ [¶ 24] Review of the relevant legislative record bolsters the view that, here, we should not mechanically treat the specific statute as taking precedence over the more general statute.[6] The history of section 8003(5) indicates that the Legislature specifically intended its enactment of the statute to empower the Board of Licensure in Medicine to revoke medical licenses by administrative action. The bill that added the general revocation authority to 10 M.R.S. § 8003(5) was an initiative of the Department of Professional and Financial Regulation. *See* L.D. 487 (120th Legis.2001). The Commissioner of the Department submitted written testimony, noting that the "proposal is not radical" and that "at least 25 State Medical Boards have the authority to revoke physician licenses, but Maine's board does not." *Hearing on L.D. 487 Before the H. Comm. on Bus. & Econ. Dev.*, 120th Legis. (2001) (statement of S. Catherine Longley, Commissioner). Her statement reflects her understanding that the legislation proposed by the Department was intended to grant the Board of Licensure in Medicine the authority to revoke medical licenses— authority that it did not then have under

its governing statute, 32 M.R.S. §§ 3263 to 3300–B.

[¶ 25] The language of the pertinent statutes and the relevant legislative history lead us to conclude that the Board has the authority to revoke a medical license pursuant to 10 M.R.S. § 8003(5)(A–1)(2–A). The Board may proceed by either undertaking its own administrative revocation proceeding pursuant to Title 10, as occurred here, or by filing a petition in the District Court seeking a judicial revocation pursuant to Title 32. These alternative paths are complementary and, understood in that light, do not conflict. Having clarified the source of the Board's authority to revoke Michalowski's medical license, we examine the corresponding jurisdictional statutes as the second step in determining whether the Superior Court has jurisdiction to review the Board's decision revoking Michalowski's medical license.

2. The Relevant Jurisdictional Statutes

█ [¶ 26] The Superior Court has jurisdiction to review actions taken by an agency—including the Board of Licensure in Medicine—to amend, revoke, or otherwise affect any license under the circumstances specified in 5 M.R.S. §§ 10001–10005 (2011) of the Administrative Procedure Act. *See 5* M.R.S. §§ 11001, 11002; *Nicholson v. Bd. of Licensure in Med.*, 2007 ME 141, ¶¶ 6–7, 935 A.2d 660; *see also* M.R. Civ. P. 80C (governing review of final agency actions). However, the Superior Court properly characterized the Board's action to revoke Michalowski's license as taken pursuant to the general revocation provision, 10 M.R.S. § 8003(5)(A–1)(2–A), and neither 32

---

6. Only if a statute is ambiguous do we "look beyond the plain language of the statute and the context of the whole statutory scheme to indicia of legislative intent such as the statute's history and its underlying policy." *HL*

*1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 17, 15 A.3d 725. In this case, the conflicting provisions of the general revocation provision and the governing statute revocation procedure give rise to such an ambiguity.

M.R.S. § 3282–A(1)(D) nor 5 M.R.S. §§ 10001–10005 provided the authority to revoke Michalowski's license.[7] Therefore, our review of the Superior Court's determination that it lacked jurisdiction over Michalowski's petition for review begins with an examination of 10 M.R.S. § 8003(5).

[¶ 27] Section 8003(5) generally provides for review of licensing board disciplinary actions in the Superior Court. *See* 10 M.R.S. § 8003(5). However, an exception exists for revocation actions: "Any nonconsensual revocation of an occupational or professional license taken under authority of [8003(5)] is subject to … de novo judicial review exclusively in District Court." 10 M.R.S. § 8003(5).[8] Additionally, the statute granting jurisdiction to the District Court provides it with exclusive jurisdiction in certain licensing proceedings, but excepts proceedings pursuant to section 8003 from that exclusive jurisdiction. *See* 4 M.R.S. § 152(9) (2011).[9] The apparent purpose of this language in the District Court's jurisdictional statute is to accommodate the split authority provided by section 8003(5) for either the Superior or District Court to review Board decisions, depending on whether that decision involves the "nonconsensual revocation" of a license. Consistent with that reading,

7. Title 5 M.R.S. §§ 10001 and 10003 (2011) generally provide for notice and the right to be heard in licensing adjudicatory proceedings, in accordance with the strictures of 5 M.R.S. §§ 9051–9064, 10051 (2011), where licensing is required as a matter of constitutional right or by statute. Title 5 M.R.S. § 10004 (2011) confers on licensing entities the authority to revoke a license without conforming to 5 M.R.S. §§ 9051–9064 and 10051 in several specific situations, including where "[t]he decision to [revoke] rests solely upon a finding or conviction in court of any violation which by statute is expressly made grounds for revocation." 5 M.R.S. § 10004(1). The Board did not revoke Michalowski's license on the grounds provided by 5 M.R.S. § 10004(1), and the procedure for judicial review set forth in 5 M.R.S. §§ 11001 and 11002 (2011) does not govern the Board's action in this case. *See* 10 M.R.S. § 8003(5).

8. The relevant portion of 10 M.R.S. § 8003(5) provides:

> The jurisdiction to suspend and revoke occupational and professional licenses conferred by this subsection is concurrent with that of the District Court. Civil penalties must be paid to the Treasurer of State. Any nonconsensual disciplinary action taken under authority of this subsection may be imposed only after a hearing conforming to the requirements of Title 5, chapter 375, subchapter 4, and, except for revocation actions, is subject to judicial review exclusively in the Superior Court in accordance with Title 5, chapter 375, subchapter 7.

> Any nonconsensual revocation of an occupational or professional license taken under authority of this subsection is subject to, upon appeal within the time frames provided in Title 5, section 11002, subsection 3, de novo judicial review exclusively in District Court. Rules adopted to govern judicial appeals from agency action apply to cases brought under this section.

9. In relevant part, 4 M.R.S. § 152(9) (2011) provides the District Court with jurisdiction over certain licensing matters:

> **9. Licensing jurisdiction.** Except as provided in Title 5, section 10004; Title 8, section 279–B; Title 10, section 8003; Title 20–A, sections 10712 and 10713; Title 29–A; Title 32, chapters 2–B, 114 and 135; and Title 35–A, section 3132, exclusive jurisdiction upon complaint of an agency or, if the licensing agency fails or refuses to act within a reasonable time, upon complaint of the Attorney General to revoke or suspend licenses issued by the agency. The District Court has original jurisdiction upon complaint of a licensing agency to determine whether renewal or reissuance of a license of that agency may be refused. The District Court has original concurrent jurisdiction to grant equitable relief in proceedings initiated by an agency or the Department of the Attorney General alleging any violation of a license or licensing laws or rules.

> (footnote omitted).

the plain language of section 8003(5) unequivocally provides exclusive jurisdiction in District Court for de novo review of nonconsensual revocations.

[¶ 28] Nonetheless, Michalowski argues that because her 42 U.S.C.S. § 1983 claim may merit a jury trial, she "cannot be compelled to pursue her claims in ... District Court." We disagree. The mere possibility that one claim in a multi-claim action may lead to a jury trial for money damages does not confer jurisdiction on the Superior Court over a subject for which the Legislature has granted exclusive jurisdiction to the District Court. *See* 10 M.R.S. § 8003(5); *see also* 4 M.R.S. § 152(2) (2011) (providing the District Court with concurrent jurisdiction to hear civil claims for money damages when no equitable relief is demanded). As such, the Superior Court properly dismissed Michalowski's petition for review of the Board order revoking her license because the District Court has exclusive jurisdiction in such matters pursuant to 10 M.R.S. § 8003(5).

B. Michalowski's Claim Pursuant to 42 U.S.C.S. § 1983

[¶ 29] Michalowski argues that the Superior Court erred in dismissing her section 1983 claim for damages, which was based on her assertion that the Board acted without authority in revoking her license, thus unlawfully depriving her of protected liberty and property interests under color of state law. Because we conclude that the Board acted within its authority in revoking her license and, on appeal, Michalowski does not otherwise as-

sert a denial of her constitutional rights, her section 1983 claim was properly dismissed.[10] *See Kane v. Comm'r of Dep't of Health and Human Servs.*, 2008 ME 185, ¶ 30 n. 4, 960 A.2d 1196 ("To formulate a cognizable section 1983 claim [for a due process violation], a plaintiff must allege that the state deprived him or her of a protected liberty or property interest without due process of law.").

The entry is:

Judgment affirmed.

10. Thus, we do not reach Michalowski's argument that the court erred in determining that the Board was immune from suit. Moreover, although Michalowski's brief includes factual statements implying Board bias against her, she does not pursue this argument in the issues presented or argument sections of her

brief, and therefore she waives any argument under section 1983 for violation of her due process rights based on bias or other Board misconduct. *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 (arguments not developed in the appellate brief and only addressed in a perfunctory manner are waived).