MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:    2017 ME 225
Docket:      Ken-17-147
Argued:      November 15, 2017
Decided:     December 7, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

TOWN OF EDDINGTON et al.

v.

EMERA MAINE

ALEXANDER, J.

[¶1]  The Town of Eddington and the Town of Bradley appeal from a judgment entered in the Superior Court (Kennebec County, *Murphy, J.*) affirming the decision of the State Board of Property Tax Review granting Emera Maine's request for a property tax abatement for the 2012 tax year pursuant to 36 M.R.S. § 841(1) (2016).  The Towns challenge the Board's finding that Emera's error in estimating a value for and reporting ownership of a transmission line that Emera did not own resulted in an "illegality, error or irregularity in assessment," rather than an "error in the valuation of

2

property."[1]    *See* 36 M.R.S. § 841(1).   Because the evidence supports the Board's findings, we affirm the judgment.

## I.  CASE HISTORY

[¶2]  The following facts are taken from the stipulations presented by the parties or found by the Board.   Emera Maine is in the business of transporting and distributing electric power over transmission lines.   There are two 345 kV[2] transmission lines located in the Towns of Eddington and Bradley: Line 390 and Line 396.  Emera owns Line 390.  Maine Electric Power Company (MEPCO) owns Line 396.

[¶3]  In the years at issue, 2011 to 2013, Emera was responsible for submitting to municipalities lists that itemized the mileage and value of the 345 kV transmission lines owned by Emera in each Town.  The purpose of these lists was to provide each Town with the description and value of the property owned by Emera so that the Towns could use the reported property value to assess property taxes.

---

[1]  The Towns further argue that Emera should be estopped from seeking an abatement for taxes paid on Line 396 because Emera is in a better position than the Towns to know what property it owns.  *See Dead River Co. v. Assessors of Houlton*, 149 Me. 349, 103 A.2d 123 (1953).  This argument is not persuasive and will not be discussed further.

[2]  These are high voltage transmission lines distributing electricity from electric generation facilities to local transmission lines.

[¶4] In 2012, an accountant at Emera was responsible for preparing the lists to submit to the Towns. To get an accurate and up-to-date account of the property owned by Emera in each Town, the accountant contacted Emera's IT department to obtain an inventory report of Emera's 345 kV transmission lines. The report provided to the accountant indicated that in Eddington Emera owned 4.56 miles of Line 390 and 5.311 miles of Line 396, for a total of 9.871 miles of 345 kV transmission line, and in Bradley Emera owned 11.7 miles of Line 390 and 6.827 miles of Line 396, for a total of 18.527 miles of 345 kV transmission line.

[¶5] Believing that Emera owned all of the 345 kV line mentioned in the report, the accountant added the mileage of Lines 390 and 396 together for a total length of 18.527 miles of 345 kV transmission line, with a value of $23,453,829.53, in Bradley and 9.871 miles of 345 kV transmission line, with a value of $12,495,965.42, in Eddington.[3]

[¶6] After Emera's 2012 lists were submitted to the Towns, the assessor for each Town called Emera's accountant to inquire about the significant increase in valuation from prior years and to confirm that the

---

[3] Emera's accountant testified that Line 396 was included in the report she received from Emera's IT department because Emera keeps a record of the mileage of lines owned by MEPCO and other privately-owned lines in their system for routine maintenance purposes, as Emera has agreements with these other companies to maintain those lines.

4

valuation was correct. The accountant confirmed to each assessor that the value reported was correct.

[¶7] Pursuant to the accountant's confirmations, the Town of Bradley committed and assessed property tax on the 345 kV transmission line mileage in the amount of $340,723.57, and the Town of Eddington committed and assessed property tax on the 345 kV transmission line mileage in the amount of $188,837.53.[4] The record indicates that MEPCO also was assessed and paid property taxes to the two Towns in 2012 on Line 396.

[¶8] Sometime thereafter, the accountant realized that she had made a mistake in preparing the 2012 lists. It was at this time that she learned that MEPCO was the owner of Line 396. When the accountant submitted her lists to the Towns in 2013, she again received calls from the Towns' assessors, as well as the Towns' managers, due to the substantial drop in the reported value of 345 kV line owned by Emera. The accountant explained to the Towns' agents that she had made a mistake in 2012 and had corrected it in the 2013 lists she submitted. When asked what had happened, the accountant explained that she included the value for Line 396 in error, believing that

_____

[4] The parties stipulated that the date of commitment for the Town of Bradley was July 17, 2012, and the date of commitment for the Town of Eddington was August 30, 2012. The parties do not dispute that Emera filed its abatement applications within three years from the dates of commitment for the 2012 tax year. The law allows an assessment to be challenged within three years if the assessment is based on an "illegality, error, or irregularity." 36 M.R.S. § 841(1) (2016).

Emera owned the line, and had later learned that MEPCO was the owner of Line 396.

[¶9]  On June 19, 2015, Emera submitted applications for abatement to the municipal officers of the Towns of Eddington and Bradley.  Emera requested abatements in the amounts of $80,007.73 from the Town of Eddington and $111,920.16 from the Town of Bradley, representing the amount of tax assessed to Emera for Line 396 in each Town for the 2012 tax year.

[¶10]  On August 18, 2015, both applications for abatement filed with the Towns were deemed denied because the Towns had not responded to the applications within sixty days.  *See* 36 M.R.S. § 842 (2016) (an abatement application not acted on "within 60 days from the date of filing of the application . . . is deemed to have been denied . . . .").

[¶11]  Pursuant to 36 M.R.S. § 841(1) and § 843 (2016), Emera appealed the "deemed denied" decisions to the State Board of Property Tax Review.  The appeals from each Town were consolidated prior to the hearing before the Board.  After a May 16, 2016, hearing, the Board issued its decision orally, on that same day, granting Emera's requests for property tax abatements from

6

each Town. The Board issued its written decision granting Emera's abatement requests on June 29, 2016.

[¶12]   In its written decision, the Board found that the abatement applications concerned an issue of error or illegality in assessment and thus were timely. *See* 22 M.R.S. § 841(1). The Board stated that the error or illegality was that Emera "was assessed and paid taxes on Line 396 for the April 1, 2012[,] tax year on property owned and assessed to MEPCO. This amounts to double taxation and is illegal."

[¶13]   The Towns of Eddington and Bradley each filed a petition for review of final agency action in the Superior Court. *See* M.R. Civ. P. 80C. The Superior Court affirmed the decision of the Board. The Towns timely appealed. *See* M.R. Civ. P. 80C; M.R. App. P. 2 (Tower 2016).[5]

## II.  LEGAL ANALYSIS

[¶14]   When the Superior Court acts as an appellate body, we review the decision of the Board directly for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 13, 147 A.3d 842. We equate the

---

[5]  Rule 2 of the Maine Rules of Appellate Procedure (Tower 2016), governing filing and timing of appeals, was replaced by Rules 2A and 2B of the Maine Rules of Appellate Procedure in the restyling of the Maine Rules of Appellate Procedure adopted to govern appeals filed on or after September 1, 2017.

review of findings of an administrative agency for substantial evidence with the clear error standard used in reviewing the fact-findings by a court. *Green v. Comm'r of the Dep't of Mental Health, Mental Retardation & Substance Abuse Servs.*, 2001 ME 86, ¶9, 776 A.2d 612.

[¶15] Issues of law, including whether the agency and reviewing court had jurisdiction and the application of a statute of limitations, are reviewed de novo. *See Antler's Inn & Rest., LLC. v. Dep't of Pub. Safety,* 2012 ME 143, ¶ 7, 60 A.3d 1248; *Zumbach v. Bd. of Real Estate Appraisers,* 2011 ME 31, ¶¶ 6-14, 15 A.3d 741. On any appeal, the party seeking to vacate a state or local agency decision bears the burden of persuasion to demonstrate error. *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768; *Rossignol v. Me. Pub. Employees Ret. Sys.*, 2016 ME 115, ¶ 6, 144 A.3d 1175.

[¶16] The statute at issue in this appeal, 36 M.R.S. § 841, establishes the procedures a property taxpayer can use to seek a tax abatement from a municipality. Section 841(1) states that between one and three years after the date of commitment, municipal officers may make a reasonable abatement to correct "any illegality, error or irregularity in assessment," but they "may not grant an abatement to correct an error in the valuation of property." Challenges to property valuations, which must be presented to local assessors,

8

not the municipal officers, must be "filed within 185 days from commitment."

36 M.R.S. § 841.

[¶17]  The Towns argue that Emera's mistake in including Line 396 in the lists submitted to the Towns for property tax purposes constitutes an "error in the valuation of property" that required a challenge within 185 days from the 2012 commitment of the taxes.

[¶18]  When the error at issue affects the taxability of the property itself or indicates any impropriety in the manner in which the property was assessed, the error is an "illegality, error or irregularity in assessment."  *See Goldstein v. Town of Georgetown*, 1998 ME 261, ¶ 8, 721 A.2d 180.  "It is elementary that no tax can be imposed without express statutory authority. . . and particularly that no double tax burden shall be imposed on any person or property . . . ."  *East Livermore v. Livermore Falls Trust & Banking Co.*, 103 Me. 418, 424, 69 A. 306 (1907).

[¶19]  Here, the record supports the Board's finding that the error made by Emera in including the mileage of Line 396, a line it did not own, on the lists it submitted to the Towns for property tax purposes resulted in an illegality, error, or irregularity in assessment.  There was substantial evidence in the record that the Towns taxed Line 396 twice in 2012.  The parties

stipulated to the fact that MEPCO owns and, in 2012, paid property taxes on Line 396. Emera's accountant testified that she mistakenly included Line 396 in the lists she submitted to the Towns in 2012 based on the reports she received from Emera's IT department. There was additional testimony that Emera conducted a four-week long investigation into the accountant's mistake, which involved checking all of Emera's data and all of the mileage of transmission line they owned, and the result of the investigation confirmed that the accountant had mistakenly included MEPCO-owned Line 396 as an Emera asset. This resulted in the Towns assessing a tax to and collecting a tax from both Emera and MEPCO for the same property, Line 396.

[¶20] The Board appropriately determined that the Towns' assessment of tax to Emera for Line 396 was an error in assessment, and not merely in valuation, entitling Emera to an abatement pursuant to 36 M.R.S § 841(1).

The entry is:

Judgment affirmed.

Charles E. Gilbert, III, Esq. (orally), and Erik M.P. Black, Esq., Gilbert & Greif, P.A., Bangor, for appellants Town of Eddington and Town of Bradley

David P. Silk, Esq. (orally), and Rebecca Gray Klotzle, Esq., Curtis Thaxter LLC, Portland, for appellee Emera Maine

Breana N. Gersen, Esq., Maine Municipal Association, Augusta, for amicus curiae Maine Municipal Association

Ben Gilman, Esq., Maine State Chamber of Commerce, Augusta, for amicus curiae Maine State Chamber of Commerce

Kennebec County Superior Court docket number AP-2016-40
FOR CLERK REFERENCE ONLY